UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JM Adjustments Services, LLC, *et. al.*

      Plaintiffs,

v.                                                                          Case No.  16-10630

J.P. Morgan Chase Bank, N.A.
a national banking association,                          Honorable Sean F. Cox

      Defendant.

_____/

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

In this discrimination case, Plaintiffs[1] allege that Defendant JPMorgan Chase, N.A.

("Defendant") improperly closed their bank accounts and terminated a service contract, in

violation of 42 U.S.C. 1981, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and the

Equal Credit Opportunity Act ("ECOA").  Plaintiff Najah Manni also asserts a defamation claim.

This matter is currently before the Court on Defendant's Motion to Dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (Doc. #9, Def.'s Br.).  Defendant seeks dismissal of

Plaintiffs' discrimination claims on the basis that Plaintiffs have failed to demonstrate

discrimination by any alleged fact.  Defendant also seeks dismissal of Najah Manni's defamation

claim, asserting that the alleged statement is not defamatory and, alternatively, that it is subject

to a qualified privilege.

_____

[1]Najah Manni, Kathy Manni, Justin Manni, Stacey Alexander, JM Adjustment Services,
LLC ("JMA"); Jidubeebs, LLC ("Jidubeebs"); 44600 Delco, LLC ("Delco"); 18 Mile Properties,
LLC ("18 Mile"); and Katfish, LLC ("Katfish").

The motion has been fully briefed by the parties. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* E.D. Mich. LR 7.1(f). The Court therefore orders that the motion will be decided upon the briefs.

For the reasons below, the Court shall **DENY** Defendant's motion in its entirety.

## BACKGROUND

**A.    Factual Background**

The Plaintiffs in this case are: Najah Manni, his wife Kathy Manni, their adult children Justin Manni and Stacey Alexander (collectively "the Manni family") and JMA, Jidubeebs, Delco, 18 Mile, and Katfish. Najah Manni–a U.S. citizen–was born in Iraq and is of Chaldean and Arab ancestry. (*Id.* at ¶ 1). JMA, Jidubeebs, Delco, 18 Mile and Katfish (collectively "the Manni companies") are limited liability companies directly or indirectly owned by the Manni family.

This case stems from the Manni family's banking relationship with Defendant. Plaintiffs allege that the closure of over 30 accounts and the termination of JMA's service contract with Defendant was the result of race or ethnic discrimination. According to Plaintiffs, Defendant's representatives were "well aware" of the Manni family's Chaldean and Arab ancestry. (*Id.* at ¶¶ 46-47).

**1.    The Manni Family's Banking Relationship With Defendant**

The Manni family has banked with Defendant for over 20 years, holding numerous bank accounts in their own names and in the names of their trusts and businesses. (*Id.* at ¶ 14). The Manni companies have also held long-standing business bank accounts with Defendant and have

obtained loans or credit from Defendant, which the Manni family guaranteed.  (*Id.* at ¶ 16).

Prior to the events described in Plaintiffs' complaint, JMA had been a service provider to Defendant for over 10 years.  (*Id.* at ¶ 17).  JMA provided outreach services to Defendant under a service contract for various loss mitigation activities relating to bank loans and mortgage financing.  (*Id.* at ¶¶ 17-18).  According to Plaintiffs, JMA fully performed its contracted-for services, carried out its responsibilities, and was well recognized by Chase for the quality and integrity of its work.  (*Id.* at ¶ 20).

### i.    Closure Of Plaintiffs' Bank Accounts

In early September of 2014, Najah Manni received a call from Jason Tinsley ("Tinsley"), an Executive Director of J.P. Morgan Private Bank.  (*Id.* at ¶ 22).  Tinsley informed Najah Manni that Defendant was abruptly severing its banking and lending relationship with the Manni family, including related corporate bank accounts, personal trust accounts, checking and savings accounts, and lending and credit relationships.  (*Id.* at ¶ 23).

Tinsley failed to provide an explanation for the closures, but he advised that there was no means of appeal or other avenue of relief.  (*Id.* at ¶ 24).  Tinsley allegedly informed Najah Manni that this adverse action would not impact JMA's business relationship (*i.e.* JMA's service contract) with Defendant.  (*Id.* at ¶ 25).

On or about September 4, 2014, the Manni family, and related trust and corporate entities, received form letters from Defendant.  (*Id.* at ¶ 26).  The letters advised that Defendant periodically reviews its existing client relationships to ensure that its products and services "continue to be appropriate for, and well aligned with, our client's goals and objectives."  (*Id.*; *see also* Ex. 1 to Pl.s' Compl.).  The letters informed Plaintiffs that Defendant was ending their

3

relationship because it determined that Plaintiffs' interests "are no longer served by maintaining a relationship with J.P. Morgan Private Bank." (*Id.*). Plaintiffs were advised that Defendant intended to close the accounts on November 30, 2014. (*Id.* at ¶ 27). According to the Deposit Agreement governing the parties' banking relationship, either Plaintiffs or Defendant may close accounts at any time for no reason or any reason. (Ex. 1 to Def.'s Br.).

Plaintiffs were additionally informed that Defendant would not extend term loans that it had previously provided to Delco, 18 Mile, and Katfish. (Compl. at ¶ 34). Until the loans expired, the letters advised that certain members of the Manni family must maintain balances sufficient to collateralize the three term loans. (*Id*. at ¶ 35).

At the time Plaintiffs received notice of the closures, they collectively held over $5 million in deposits with Defendant. (*Id.* at ¶ 34).

### ii.     Termination of JMA's Service Contract

Notwithstanding Tinsley's alleged representation that JMA's service contract would remain unaffected by the account closures, Najah Manni was later notified that JMA's contract volume would be cut in half. (*Id.* at ¶ 36). David Conley, Defendant's Vice President, explained that Defendant's Third Party Oversight Group determined that Defendant needed two vendors for "business resiliency." (*Id.* at ¶ 37).

On June 5, 2015, Conley allegedly informed Najah Manni that he had received a directive from the Third Party Oversight Group to terminate JMA's service contract because Najah Manni was a "reputational risk" to Defendant. (*Id.* at ¶ 38). Plaintiffs allege, however, that Defendant's "Third Party Risk Assessment," dated May 20, 2015, found that JMA did not pose any reputational risk to Defendant. (*Id.* at ¶ 39; *see also* Ex. 2 to Pl.'s Compl., May 2015

4

Risk Assessment).  According to Plaintiffs, Defendant has yet to provide a basis for the "reputational risk" statement.  (*Id.* at ¶ 41).

**B.    Procedural Background**

Plaintiffs filed this action against Defendant on February 19, 2016.[2]  (Doc. #1, Pl.s' Compl.).  Plaintiffs' complaint asserts the following four counts: Count I – Violation of 42 U.S.C. § 1981; Count II – Violation of Michigan's Elliot-Larsen Civil Rights Act; Count III – Violation of 15 U.S.C. § 1691E, on behalf of Najah and Kathy Manni and Jidubeebs; Count IV – Defamation, on behalf of Najah Manni.

On April 15, 2016, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  (Doc. #9, Def.'s Br.).  Defendant argues that Plaintiffs have failed to set forth any actual facts to support their discrimination claims.  Defendant seeks dismissal of Plaintiff Najah Manni's defamation claim on two alternative grounds: (1) the term "reputational risk" is not a defamatory statement; or (2) even if construed as defamatory, the statement is subject to qualified privilege.  The motion has been fully briefed by the parties.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

---

[2] The case was originally assigned to Judge Robert H. Cleland.  On March 2, 2016, the case was reassigned to Judge Sean F. Cox pursuant to an Order re: Disqualification.  (Doc. #3).

[3] Certain portions of, and exhibits attached to, Defendant's motion have been redacted. Defendant has provided Plaintiffs and the Court with unredacted copies.

plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## A.    Extraneous Materials Attached To The Parties' Briefs

Here, both Defendant and Plaintiffs attach some materials to their briefs that are not attached to Plaintiffs' complaint.

### 1.    Extraneous Materials Attached To Defendant's Motion

The following extraneous materials are attached to Defendant's motion: (1) Deposit Account Agreement governing relationship between Defendant and Plaintiffs; and (2) a 2007 letter to JMA and a 2010 letter to John Manni regarding currency transaction reports, wherein Defendant notified that the pattern of cash transactions in certain accounts could be viewed as an attempt to avoid certain filing requirements and that if this pattern of cash activity did not

6

change, accounts may be closed.[4]

The copy of the Deposit Agreement is properly before the Court because it "govern[s] the Plaintiff[s'] rights and [is] necessarily incorporated by reference." *Brewington v. Nationstar Mortgage, LLC*, 2013 WL 4009160 (E.D. Mich. Aug. 5, 2013) ("where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the motion [to dismiss] need not be converted to one for summary judgment").

However, the 2007 and 2010 letters are not properly before the Court at this time.  The Court finds that these letters raise issues of fact that go beyond the allegations contained in Plaintiffs' complaint.  Defendant's reliance on *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc*., 2011 WL 2610661 (S.D.N.Y. June 27, 2011) has not convinced the Court otherwise.

**2.   Extraneous Materials Attached To Plaintiffs' Response**

The following extraneous materials  are attached to Plaintiffs' Response: (1) news articles regarding complaints of discriminatory closures by Defendant and other major banks; (2) April 25, 2016 letter from Arab American Chamber of Commerce regarding discriminatory account closures by Defendant and other major banks; (3) a December 2013 email from Defendant's representative to Plaintiff Justin Manni thanking him for his patience and stating that Plaintiffs are her favorite clients; and (4) a July 2011 email from Defendant's representative to Plaintiff Justin Manni regarding transitioning business accounts to private wealth.

---

[4] The 2007 and 2010 letters are redacted from the record, but are included in an unredacted copy of the pleadings provided to the Court.  (*See* Ex. 1-4 to Def.'s Br.).

7

The Court finds that these extraneous materials add specific facts beyond the scope of Plaintiffs' complaint and are not properly before the Court at this time.

## ANALYSIS

**A.      Plaintiffs' Discrimination Claims**

**1.      Section 1981 Claims**

Plaintiffs' Count I alleges that Defendant has acted in violation of 42 U.S.C. § 1981. Section 1981 prohibits intentional racial discrimination in making and enforcing contracts. *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012).

In order to establish a claim for racial discrimination under Section 1981, it must be alleged that: (1) Plaintiffs had a contractual right that Defendant impaired; and (2) that racial discrimination drove Defendant's decision to interfere with Plaintiff's contractual right. *Williams v. Richland County Children Servs.*, 489 Fed. App'x 848, 851 (6th Cir. 2012).

**2.      ELCRA Claims**

Plaintiffs' Count II alleges that Defendant violated Michigan's Elliott-Larsen Civil Rights Act, which prohibits the denial of the "full and equal enjoyment" of a "place of public accommodation or public service" because of race or national origin.  M.C.L. § 37.2302(a). Plaintiffs may prove this claim by presenting direct or circumstantial evidence.  *Hazel v. Ford Motor Co.*, 464 Mich. 456, 462 (2001).

**3.      ECOA Claims**

Plaintiffs' Count III alleges that Defendant violated the Equal Credit Opportunity Act, which makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race [or] national origin."  15 U.S.C. §

8

1691(a).

**B.    Plaintiffs Have Sufficiently Alleged An Inference Of Discriminatory Intent**

Defendant contends that Plaintiffs' § 1981, ELCRA, and ECOA claims should be dismissed because they "fail to allege a single fact supporting a claim of discrimination." (Def.'s Br. at 1). Defendant argues that Plaintiffs merely allege their race or ethnicity, which is an insufficient basis for inferring discrimination. Defendant's argument is without merit. The Court finds that Plaintiffs have alleged more than race to support the inference of discriminatory intent. Accordingly, Defendant's motion to dismiss Plaintiffs' discrimination claims shall be DENIED.

The parties agree that § 1981 and ELCRA claims are analyzed under the same framework, and that this framework applies with equal force to Plaintiffs' claims under the ECOA. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6 th Cir. 1999) ("We review claims of alleged discrimination brought under § 1981 and the Elliott-Larsen Act under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964."); *see also Mays v. Buckeye Rural Elec. Co-op., Inc*., 277 F.3d 873, 880 (6th Cir. 2002) ("Given the similar purposes of the ECOA and Title VII," courts analyze the statutes using the same analytical framework).

At this stage in the proceedings, "Plaintiff[s] need not establish a prima facie case of discrimination under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). However, Plaintiffs must provide enough factual material "to allow the Court, armed with judicial experience and common sense to draw the reasonable inference" of discriminatory

intent.  *Life For Relief & Development v. Charter One Bank, N.A.*, 2013 WL 3810255, *1 (E.D.

Mich. July 23, 2013) (internal citations and quotations omitted).

      The Sixth Circuit has instructed that at this "early stage," courts should "take into

account economic or logistical circumstances that prevent [Plaintiffs] from obtaining evidence

supporting [their] claim[s] and adjust the plausibility threshold appropriately to account for these

difficulties."  *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015).[5]

    **1.**      **Factual Allegations That Support An Inference Of Discrimination**

      Defendant's argument–that Plaintiffs have only alleged race and discrimination–is simply

not true.  Defendant conveniently disregards factual allegations contained in the complaint,

which tip the scale in favor of plausibility.

      Read in the light most favorable to Plaintiffs, the following allegations support an

inference of discriminatory intent: (1) the Manni family is of Chaldean and Arab ancestry; (2)

the Manni family has held numerous bank accounts with Defendant for over 20 years; (3)

Defendant's representatives were "well aware" of the Manni family's ancestry; (4) JMA–a

substantial and reputable company–had been a service provider to Defendant for over 10 years;

---

     [5] To the extent that Defendant argues that the Sixth Circuit's decision in *El-Hallani*
supports dismissal of Plaintiffs' discrimination claims, this argument is misplaced.

In *El-Hallani*, the Sixth Circuit reversed the lower court's decision to grant the defendant bank's
motion to dismiss.  There, the plaintiffs filed a putative class action against Huntington Bank
claiming discrimination.  To support their allegations, the plaintiffs offered an affidavit from a
former bank employee averring that he was pressured to close a large number of Arab-
Americans' accounts and the plaintiffs identified 25 customers with similar complaints.

The plaintiffs here, just like the plaintiffs in *El-Hallani*, offer more than just their race to support
an inference of discrimination.  While, the inference may have been stronger for the *El-Hallani*
plaintiffs, Plaintiffs here have still plausibly alleged discrimination.

(5) JMA fully performed its services and was recognized for the quality and integrity of its work;

(6) Defendant unilaterally terminated over 30 of Plaintiffs' accounts–which were profitable to

Defendant– without any plausible reason; (7) Defendant terminated JMA's service contract

based on the false assertion that Najah Manni was a reputational risk; and (8) other Chaldean and

Arab-Americans made similar discrimination complaints against Defendant during the relevant

time period.

Defendant does not explain *why* the allegations regarding other Chaldean and Arab-

Americans making similar discriminatory complaints, or the allegations regarding pretext, fail to

tip the scale in favor of plausibility.

### i. Allegation That Other Chaldean And Arab-Americans Complained of Similar Discriminatory Closures

As to the allegation of similar discrimination complaints, Defendant merely asserts that

Plaintiffs' "vague and entirely unsupported allegations that unidentified people have made

'similar complaints' against [Defendant] do not save their facially defective Complaint." (Def.'s

Br. at n. 8).

First, the Court notes that Defendant appears to be holding Plaintiffs to a higher pleading

standard than is required at this stage. Given that Plaintiffs have not yet been afforded the

opportunity to engage in any discovery, it is not surprising that their allegation lacks specific

factual detail. Plaintiffs' allegation, however, is not fatally vague or conclusory. Taken as true,

the allegation that other Chaldean and Arab-Americans have complained of similar

discriminatory closures by Defendant makes discriminatory intent more plausible. *See El-*

*Hallani* 623 F. App'x at 736 (finding that the"closing of other accounts around the same time

lends additional weight to" Plaintiff's discrimination claims). The fact that Plaintiffs have not

11

identified these individuals goes to the weight of the inference, but it does not make the inference irrelevant.

This allegation also rebuffs Defendant's argument that Plaintiffs' have failed to allege any facts suggesting that Defendant treated non-Chaldean/Arab-American customers any differently than it treated Plaintiffs. As Plaintiffs point out, "[p]attern and practice evidence can be relevant in proving disparate treatment discrimination claims." (Pl.'s Resp. at 15) (citing *Bacon v. Honda of Am. Mfg., Inc*., 370 F.3d 565, 575 (2004)).

### ii.    Allegations As To Pretext

Plaintiffs assert a number of allegations as to pretext. To support the allegation that the Defendant's reason for closing over 30 accounts was pretextual, Plaintiffs allege that they were not in default of any of their credit transactions at the time of the account closures. (Compl. at ¶ 60). Plaintiffs further allege that such transactions were profitable for Defendant. (*Id.*). Accordingly, Plaintiffs contend that the explanation that Plaintiffs' "interests are no longer served by maintaining a relationship with [Defendant]," was false and disingenuous. (*Id*.).

Plaintiffs also allege that Defendant used the term "reputational risk" against Najah Manni as pretext for unlawful discrimination. To support this allegation, Plaintiffs cite: Najah Manni's 20-year banking relationship with Defendant (*Id*. at ¶ 63); the fact that a "Third Party Risk Assessment" for JMA noted no exceptions as to the reputational risk category (*Id*. at ¶ 64); and a background investigation commissioned by Plaintiffs, which revealed no information that could have led Defendant to reasonably believe Plaintiffs constituted a reputational risk. (*Id*. at ¶ 64).

As to these allegations, Defendant argues that are a number of reasonable non-

12

discriminatory reasons why it decided to close Plaintiffs' accounts and terminate JMA's service

contract.  (Def.'s Br. at 15).  For example, Defendant argues that the "much more only [sic]

'plausible' inference to be drawn is rooted in the questionable currency transactions – a

reputational risk – information which Plaintiffs withheld from their Complaint."  (*Id.*).  In

making this argument, however, Defendant improperly relies upon materials outside the four

corners of the complaint.

Moreover, even if properly before the Court, the "mere existence of more likely

alternative explanations does not automatically entitle a defendant to dismissal."  *16630*

*Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.* 727 F.3d 502, 505 (6th Cir. 2013).

Accordingly, Defendant's explanations will not bar the door to discovery where, as here, a

plaintiff has plausibly alleged discrimination.  (*Id.; see also El-Hallani,* 623 F. App'x at 738)

(reaffirming that the mere existence of a plausible alternative explanation for a defendant's

alleged unlawful conduct is not enough to dismiss an adequately pled complaint) (internal

citations omitted).

### iii.    Defendant's Remaining Arguments Are Not Persuasive

Rather than directly address the sufficiency of Plaintiffs' allegations, Defendant merely

cites a number of cases to support the position that, "where ... plaintiffs simply state their race

and plead discrimination, they have failed to state a plausible claim for relief."  (Def.'s Br. at

10).

While Defendant correctly recites the law, Defendant's reliance on such cases is

misplaced.  These cases are factually distinct from the instant case because, as already stated,

Plaintiffs allege more than race in support of their discrimination claims.  (*See* Pl.'s Resp. at 20-

13

21) (contrasting the cases relied upon by Defendant).

**C.      Plaintiff Najah Manni Has Sufficiently Alleged Defamation**

As to the defamation claim, Defendant argues Plaintiff Najah Manni has failed to allege a defamatory statement or, alternatively, that the statement is subject to qualified immunity. Defendant's arguments are without merit.  Accordingly, the Court shall DENY Defendant's motion to dismiss Plaintiff Najah Manni's defamation claim.

To establish a claim for defamation, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Thomas M. Cooley Law Sch. v. Doe 1*, 300 Mich. App. 245, 262  (2013).  Najah Manni must plead his defamation claim with specificity by identifying the exact language that he  alleges to be defamatory.  (*Id.*).

Here, Najah Manni alleges that in a Risk Assessment of JMA, dated May 20, 2015, Defendant noted "no exceptions" to the category of "reputational risk."  (Compl. at ¶ 74). Plaintiff further alleges that approximately two weeks later, "persons in [Defendant's] 'Third Party Oversight Group' had published to David Conley and other Chase employees that Najah Manni posed a 'reputational risk' to Chase and that the 'Third Party Oversight Group' was therefore directing David Conley to terminate the relationship with JMA."  (*Id*. at ¶ 74). According to Plaintiff, the statement that Najah Manni posed a "reputational risk" was patently false, as evidenced in part by his 20-year banking relationship with Defendant.  (*Id*. at ¶ 75). Plaintiff also asserts that Najah Manni does not have a history of impropriety, (*Id*.), and that a

14

background investigation commissioned by Plaintiffs revealed no information that could have

led Defendant to reasonably believe Najah Manni to pose such a risk.  (*Id*. at ¶ 76).  Plaintiff has

allegedly suffered damages to his business and reputation as a result of the defamatory statement.

(*Id*. at ¶ 78).

### 1.      The Term Reputational Risk Is Defamatory

First, Defendant argues that the term "reputational risk" is not defamatory.  The Court

disagrees.  "A communication is defamatory if it tends to lower an individual's reputation in the

community or deters third persons from associating or dealing with that individual."  *Ireland v.*

*Edwards*, 230 Mich. App. 607, 614 (1998), *citing New Franklin Enterprises v. Sabo,* 192 Mich.

App. 219, 221 (1991).  Not all defamatory statements are actionable, however.  *Id.*  To constitute

defamation, the statement must appear to "stat[e] actual facts about the plaintiff" and it must be

objective enough to be provably false.  (*Id.* at 636-37).

Defendant does not dispute that the term "reputational risk" would tend to lower an

individual's reputation in the community or deter others from associating or dealing with him.

Nor does Defendant dispute the fact that it is objective enough to be provably false.  Instead,

Defendant argues that it "simply cannot be the case that it constitutes defamation every time a

company and its employees acknowledge various risks as factors in determining whether to

continue to do business with its clients."  (Def.'s Br. at 22).  Defendant fails to support this

argument with any applicable case law.[6]

--------

[6] In its Reply brief, Defendant argues for the first time that the "reputational risk"
statement is not false and therefore, Plaintiffs have failed to state a claim for defamation.
Defendant points to a 2007 and a 2010 letter attached to its motion, wherein Plaintiffs were
advised that a pattern of transactions could be viewed as an attempt to avoid certain filing
requirements.  (Doc. #13, Def.'s Reply at 7).  This argument is improperly asserted for the first

The Court finds that referring to Najah Manni as a "reputational risk" would lead others in the banking community not to associate with him. The Court also finds that this statement is provably false in light of Defendant's own "Third Party Risk Assessment" reports. Accordingly, Plaintiff has sufficiently alleged a defamatory statement.

### 2.    Defendant's Qualified Privilege Defense Does Not Warrant Dismissal At This Stage In The Proceedings

Next, Defendant argues that even if the Court determines that "reputational risk" is defamatory, the statement is "subject to a qualified privilege where, without question, the employees 'share an interest' in minimizing any risk to their employer, Chase, from its customer relationships." (Def.'s Br. at 25). Najah Manni responds that he has alleged malice and bad faith, which, if proven, can defeat Defendant's qualified privilege defense. The Court agrees that Najah Manni has plausibly alleged malice. Accordingly, Defendant's qualified privilege defense does not warrant dismissal of the defamation claim at this juncture.

Qualified privilege is a defense that must be proven by Defendant. Defendant must show: (1) good faith; (2) an interest to be upheld; (3) a statement limited in its scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties. *Elias v. Fed. Home Loan Mortg. Corp.*, 581 Fed. App'x 461, 467 (6th Cir. 2014) (internal citations omitted).

The defense of qualified privilege "can be overcome if the defendant acted with actual malice, meaning with knowledge of the statement's falsity or with reckless disregard of the

---

time in Defendant's Reply brief. *See Sims v. Piper*, 2008 WL 3318746, *5 (E.D. Mich. 2008) (noting long-standing precedent in the Sixth Circuit regarding waiver of issues raised for the first time in reply briefs.) (internal citations omitted). Moreover, the argument relies on materials outside of the complaint. Consequently, the Court shall disregard this argument.

truth." (*Id.*) (internal citations omitted). Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, Najah Manni alleges that Defendant's employees knew the "reputational risk" statement was false or acted in reckless disregard of its falsity. (*Id.* at ¶ 77). To support this claim, Plaintiff's complaint points to the following: (1) the fact that Najah Manni has no history of impropriety; (2) Najah Manni's 20-year banking relationship with Defendant; (3) a background investigation commissioned by Plaintiffs; and (4) the "Third Party Risk Assessment" of JMA, which noted "no exceptions" to the category of reputational risk.

Defendant summarily argues that Plaintiffs' attempt to defeat privilege with a claim of "actual malice" is unavailing where "[Plaintiffs] have made no factual allegations demonstrating such malice, and the evidence attached to their Response demonstrates the exact opposite." (Def.'s Reply at 7).

Defendant's reasoning is flawed. First, Defendant improperly refers to materials extraneous to the complaint. Second, the complaint sets forth sufficient facts to make a plausible finding that the statement made about Najah Manni was done with malice. There exists a factual dispute as to whether Defendant had a good faith basis for the publication. At this stage in the proceedings, Najah Manni is only required to plausibly plead malice, not prove it. The Court finds that Najah Manni has adequately alleged malice.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' complaint is **DENIED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  July 20, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 20, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

18